PETERSON, J.,
dissents.
I dissent because the trial court’s computation of Ellis Peetluk’s income necessary for the assessment of child support is difficult for me to understand or accept. The concurring opinion criticizes any discussion of this point because it was not raised on appeal. I must admit that I am puzzled by Peetluk’s failure to include in his brief the discussion that follows in this dissent. Nevertheless, due to the obvious errors in computation made by the trial court and in hopes of preventing future error, I believe some discussion is warranted.
Peetluk was primarily a criminal defense lawyer engaged as a sole practitioner in Atlanta, Georgia. He and his former wife moved there from Florida after terminating his association with a Florida firm around 1992. The net earnings from Peet-luk’s law practice averaged $40,000 before 1996 when his practice changed after representing a few personal injury plaintiffs that had been involved in a single tractor-trailer/automobile accident. The record includes copies of his income tax returns[1] for 1998 through 2000 which indicate:
Calendar Year 1996 1997 1998 1999 2000
Gross Income from Law Practice $92,075 $19,409 $707,410 $140,182 $97,059
*1176 Net Income (loss) from Law Practice $40,328 ($ 6,280) $636,470 $ 14,903 ($27,310)
Other Income 43 8,077 15,623 $32,173[2]
Federal Tax Paid O $235,740 $ 4,765 $ 3,217 $12,871 -e*
Income After Taxes $27,500 $13,129 $408,807 $ 25,761 $ 1,646
The return for 2001 was not available because the trial took place in January of that year.
Review of Peetluk’s earnings reveals that most of his financial success is owed to clients that were referred to him as a result of a tractor-trailer/automobile accident that occurred in Georgia. More specifically, in the first case, the Harper case settled after two days of trial and generated a $680,000 fee in 1998. The Walker case generated a fee of at least $30,000, but the fee has not yet been taken because a dispute is being litigated with the client over whether the costs were to be paid out of the gross proceeds. The Williams case generated $302,000 in fees and reimbursement for costs in the amount of $29,000. That fee is in dispute because the former attorneys representing the client sued Peetluk claiming that they were entitled to a portion of the fees. Although testimony indicated that the former attorneys’ claim was without merit, the ongoing cost of litigation continues to deplete the fee.
The trial court based the award of child support upon an income of $344,000 per year or $28,667 per month. Specifically, the trial court’s calculations were as follows:
While the wife’s income is now approximately $30,000.00 a year, the husband has/will receive attorney’s fees of $680,000.00 from the Harper case in 1998, $50,000.00[3] from the Walker case in 1999, and $302,000.00 from the Williams case in early 2001 for a total of, $1,032,000.00 in the last thirty (30) months. Therefore, the husband’s average gross income from the attorney’s fees from these three (3) cases is $28,667.00 per month or $344,004.00 per year.
The trial court then acknowledged that an income of $344,000 per year or $28,667 per month did not account for certain costs:
Nevertheless, the Husband is in litigation over fees obtained on those cases (Walker and Williams cases), has IRS delinquent tax exposure for 1996 ($30,-000), 1998 ($5,000) and 1999 ($3,000), all of which remain unpaid. There is also a medical lien on the Williams case proceeds in an unspecified amount. He still has student loans outstanding in the amount of $117,000 including principal and interest ...
Notwithstanding, the trial court still found:
The husband shall pay child support in the amount of $2,000.00 per month. The court calculates child support using the Husband’s average gross income of $344,000.00 per year.
*1177 Additionally, the trial court required Peet-luk to maintain a $250,000 life insurance policy for the wife and child, pay the wife $16,000 for her share of premature IRA distributions and pay the wife’s attorney’s fees of $29,657 within 30 days of the final judgment.
It is impossible to determine from the final judgment which months or years constituted the 30 months or three years used by the trial court to average the gross fees. The above quotation from the judgment indicates that the trial court used gross income for the years 1998 to and including early 2001 for its computation, a four year period, not a three year period. If the income available after taxes for the years 1998 through 2000 are combined with the court’s use of the gross proceeds of $302,000 from the Williams case, one cannot arrive at a $344,000 average net income per year. The computation using the following years results in a much lower average:
[[Image here]]
Of course, if one uses a five year period, the average income is even lower. The use of the three year period by the trial court to average gross fees earned in four different calendar or tax years was an incongruent act.[4]
Averaging income for purposes of assessing alimony and child support has been employed in determining the awards. See, e.g., Greenberg v. Greenberg, 793 So.2d 52 (Fla. 4th DCA 2001); Woodard v. Woodard, 634 So.2d 782 (Fla. 5th DCA 1994); Shudlick v. Shudlick, 618 So.2d 740 (Fla. 4th DCA 1993); see also Deoca v. Deoca, 837 So.2d 1137 (Fla. 5th DCA 2003). In Greenberg and Woodard, the averaging method was used by the trial courts, but reversed on appeal because of unusual circumstances. In Woodard, the trial court had averaged income over a four year period. In reversing this court stated:
Past average income, unless -it reflects current reality, simply is meaningless in determining a present ability to pay. Past average income will not put bread on the table today ... If the court is going to impute income not apparent from the record, it must indicate the amount and source.
Woodard 634 So.2d at 783. In the instant case, the trial court’s finding ignored current reality by using gross fees in calculating income and imputed the difference between those gross fees and net income to Peetluk. This, of course, will not put bread on the table today.
Peetluk’s law practice generates income sporadically with periods of no income *1178 while expenses continue. When the practice does generate fees, it is important to determine when those fees are available and what portion is personally available to a lawyer after paying not only those costs associated with the case generating the fee but also the overhead costs of maintaining a law practice, such as licenses, research materials, secretarial help, office supplies and taxes. The trial judge in the instant case ignored all of these deductions when he focused only upon the gross amount of the fees instead of the fees remaining after payment of all the costs required to support a law practice. The trial court should have determined the amount that Peetluk could use personally not the gross amount that came into the law practice. Determination of the amount available for personal use was readily available from the income tax returns placed into evidence for a period of five years together with the testimony describing the nature of the practice and the history of the personal injury cases.
The trial court made reference to Peet-luk’s admission that he has a pending plaintiffs case in which he has made a 4.5 million dollar demand upon the defendants who are insured. Current reality should be used to evaluate that speculative source of income. Peetluk’s comment in his brief summarizes the reliance upon that source:
It hardly requires argument that a demand letter does not guarantee that a party will be successful in winning a determination of liability at trial, much less whether any damages are actually awarded or collected.
The pending plaintiffs case had not been set for trial when the trial of the instant case took place. Additionally, the pending case was the only one remaining in Peet-luk’s inventory of personal injury cases.
It should be made clear that the proceeds from Peetluk’s financial success as a result of being selected to represent plaintiffs from a single accident may not be available for the acquisition of many basic future comforts. He has a substantial debt burden to satisfy as recognized by the trial court including IRS delinquent taxes of $38,000; student loan balance of $117,000; wife’s share of an IRA distribution of $16,000; wife’s attorney’s fee of $29,657; the litigation expenses of the Williams and Walker cases; the expenses of litigating his remaining case; and finally, the $24,000 per year assessed against him for child support. He has no home or law office and rents living quarters in a home owned by a friend in Georgia and occupies a space in another lawyer’s office in Georgia. The marital home once owned in Georgia was sold when the parties had made a determination to move to Florida and the $305,000 marital home purchased in Florida was awarded to the wife who has a burden of an $89,000 mortgage. The trial court concluded that an equitable distribution of the assets would be the distribution of the home to the wife and Peet-luk’s law practice to him which I understand to be one personal injury case and $200,000 in the trust account.
The trial court erroneously concluded that the base income could be fairly calculated using only the gross fees earned over a 30-month period that included the unusually high gross fees from the personal injury cases to arrive at an average gross income of $344,000 per year. The former wife’s gross income of $30,000 per year was also erroneously considered in arriving at the former husband’s child support requirement of $2,000 per month. The use of only gross income which included the years of spiked gross income in the instant case rather than net income to determine the base income required by section 61.30, Florida Statutes (1991), was contrary to the dictates of that statute. Further, the *1179 support order makes no allowance for the operating costs of conducting the former husband’s law practice, for income taxes or any other allowable deductions prescribed by section 61.30(3). Deductions must also be made from the former wife’s gross income to arrive at her net income for the purpose of calculating child support.
In sum, the trial court erred by imputing annual income of $344,000 to the former husband because it does not realistically represent his annual income and it does not represent an amount that is available for the purpose of computing child support.

. The parties filed separate income tax returns during the marriage.

. This income was the proceeds of an early IRA distribution.

. The court may have added a fee of $30,000 and cost recovery of $24,000 to arrive at this estimated $50,000 fee for the Walker case.

. When income averaging was available to tax payers who had spiked income, even the internal revenue code allowed a period of five years as a divisor.